STATE v. DULUTH GAS & WATER COMPANY.

STATE v. WEST DULUTH ELECTRIC COMPANY.

STATE v. HARTMAN GENERAL ELECTRIC COMPANY.

STATE v. DULUTH WATER & LIGHT COMPANY.

STATE v. DULUTH STREET RAILWAY COMPANY.

April 26, 1899.

Nos. 11,515, 11,516, 11,517, 11,518, 11,717—(13, 14, 15, 16, 16½).

**Taxes—Assessment of Corporations—Capital Stock—G. S. 1894, § 1530.**

G. S. 1894, § 1530, was designed to constitute the exclusive method of listing and assessing for taxation the franchises and other intangible property of corporations and associations falling within its purview. The method there provided for reaching such intangible property for taxation is by listing and assessing the entire capital stock at its market or actual value, less certain specified deductions.

**Same—G. S. 1894, § 1524, Item 14—"Franchises"—Deduction of Indebtedness—Constitution.**

The personal property referred to in item 7 is the tangible property specifically listed and assessed, and does not include "franchises." G. S. 1894, § 1524, item 14, providing for listing "franchises" as a separate and

distinct class of personal property, applies only to private persons, or others not falling within the provisions of section 1530. The provision in section 1530 for deducting the total amount of the indebtedness of a corporation or association from the value of its stock is unconstitutional, because resulting in inequality of taxation. But the invalidity of this provision does not render the remainder of the section invalid.

### Same—Irregularities in Assessment.

Certain irregularities of the county board and county auditor in increasing the assessed value of items 18 and 27 of personal property, and in extending it on the assessment rolls, held not to have prejudiced the defendants; it not appearing that, as thus increased, either item was overvalued.

### Gross-Earnings Tax not Applicable to Street Railways.

G. S. 1894, § 1669, providing for the taxation of railroad companies by requiring them to pay a percentage on their gross earnings, does not apply to street railways.

### Duluth Street Railway—G. S. 1894, § 1669.

Held, that upon the facts the Duluth Street Railway Company is not a "railroad company," within the meaning of G. S. 1894, § 1669.

In proceedings in the district court for St. Louis county for collection of personal property taxes delinquent March 1, 1896, answers and objections were filed by the above-named defendants. The cases, except that of the Duluth Street Railway Company, were tried before Cant, J., who decided that judgment should be entered against the Duluth Gas & Water Company for $25,925.90, against the Hartman General Electric Company for $4,765.40, against the Duluth Water & Light Company for $3,025.70, and against the West Duluth Electric Company for $276.32, and who certified the cases to the supreme court for its decision of the questions stated in the opinion. The case of the Duluth Street Railway Company was tried before Moer, J., who decided that company was not liable to pay a percentage of its gross earnings in lieu of all other taxes, and that plaintiff was entitled to judgment in the sum of $4,486.45, and who certified the case to the supreme court for its decision of the questions stated in the opinion. Remanded with directions.

*William B. Phelps,* County Attorney for St. Louis County, for plaintiff.

76 M.—7

Franchises are special privileges conferred by government on individuals which do not belong to the citizens generally by common right. Spring Valley v. Schottler, 62 Cal. 69. The franchise should be assessed at its value, as determined by the assessor and the equalizing board. Porter v. Rockford, 76 Ill. 561; State Tax on Ry. Gross Receipts, 15 Wall. 284, 296; Case of the State Freight Tax, 15 Wall. 232, 282; State R. Tax Cases, 92 U. S. 575, 603. Under G. S. 1894, § 1511, "person" may be used to include "corporation." By section 1516 "the capital stock and franchises of corporations and persons" shall be listed and taxed. If a mere license, the franchise is still to be taxed. Section 1530 was not intended to provide a means of ascertaining the value of a franchise owned by a corporation. See Porter v. Rockford, supra. Taxes must, in their operation, be equal and uniform. Sanborn v. Commrs. of Rice Co., 9 Minn. 258 (273); Comer v. Folsom, 13 Minn. 205 (219); Le Duc v. City of Hastings, 39 Minn. 110. The rule of uniformity extends to all classes of property. Knowlton v. Board, 9 Wis. 378, 410. A franchise may be conferred on individuals, as well as on corporations. The deductions provided for in section 1530 would result in inequality and lack of uniformity. The language of Const. art. 9, §§ 1, 3, contemplates that a valuation shall be placed on all property, including franchises, without regard to its ownership or the amount of indebtedness of the owner. The deductions in question would violate the constitution in this regard. Exchange v. Hines, 3 Oh. St. 1; In re Assessment, 4 S. D. 6. State v. Moffett, 64 Minn. 292, was based on a practical construction long adopted, and not on principle.

*William B. Phelps* and *Charles C. Teare*, for plaintiff (Duluth Street Railway case).

This defendant is not a railroad company and taxable under G. S. 1894, § 1669. "Railroad" means a commercial railroad. Cedar Rapids v. City, 106 Iowa, 476; Fidelity v. Douglas, 104 Iowa, 532; Funk v. St. Paul C. Ry. Co., 61 Minn. 435; Elliott, Roads & S. 557. See Elfelt v. Stillwater St. Ry. Co., 53 Minn. 68. This defendant was recognized as a street-railway company in McKillop v. Duluth

St. Ry. Co., 53 Minn. 532; City of Duluth v. Duluth St. Ry. Co., 60 Minn. 178, and Wilson v. Duluth St. Ry. Co., 64 Minn. 363.

*Washburn, Lewis & Bailey,* for defendants.

The privilege here involved cannot be exclusive. It is a mere license. It may be questioned whether a license from a municipality to lay pipes and mains under the streets is a franchise at all, within the statute, or could ever be taxed as an item of property. People v. Lynch, 51 Cal. 15; Davis v. Mayor, 14 N. Y. 506; Chicago v. People, 73 Ill. 541, 548. It has no separate existence and taxable value, though it may enter as an element into the value to be placed on the tangible property. A franchise tax in the nature of an excise tax may undoubtedly be laid. Such tax is not laid in this state, and authority to levy a tax which shall include such franchise must be sought in the statute. It is discretionary with the legislature to decide whether corporations shall be taxed on their tangible property, or on their capital stock in such way as to include their franchises. Covington v. City, 92 Ky. 312; Porter v. Rockford, 76 Ill. 561; Board v. Old Dominion, 18 W. Va. 441; Raynsford v. Phelps, 43 Mich. 342, 347; City v. Allen, 26 N. J. L. 398; City v. Picot, 38 Mo. 125; Osborn v. U. S. Bank, 9 Wheat. 737, 859; Brown v. State, 12 Wheat. 419, 444. It has nowhere been the policy of the law to subject a taxpayer to the caprice of the assessing officers in such manner as here contended. See 2 Beach, Priv. Cor. § 798; 1 Desty, Taxn. 349; State R. Tax Cases, 92 U. S. 575, 578; Commrs. v. Hamilton, 12 Allen, 298; Hamilton Co. v. Massachusetts, 6 Wall. 632; Spring Valley v. Schottler, 62 Cal. 69; Com. v. Lancaster, 123 Mass. 493; Society for Sav. v. Coite, 6 Wall. 594; People v. Badlam, 57 Cal. 594, 603; Porter v. Rockford, supra; Henderson v. Com., 99 Ky. 623; Covington v. City, supra.

The deduction of indebtedness provided for in section 1530 does not invalidate the section. This section is analogous to section 1526, the validity of which has been sustained. State v. Rand, 39 Minn. 502. There is nothing in the method of section 1530 inconsistent with section 1526, or any other provision of the statutes, for the tax provided for in section 1530 is in addition to all taxes imposed on individuals,—a tax on the privilege, license, or franchise

of the corporation to carry on business. In taxation there is a broad distinction between property and franchises. 4 Thompson, Corp. §§ 5557, 5560; Provident Inst. v. Massachusetts, 6 Wall. 611; Society for Sav. v. Coite, supra; Hamilton v. Massachusetts, supra. While section 1530 provides a method of equal and uniform taxation, in that it applies to all corporations, it is not necessary that it be equal and uniform with respect to all other property, for it does not provide for what is strictly a property tax. The property of a corporation is assessed as is the property of an individual; the franchise or capital-stock tax is in addition to the strictly property tax. The state need not tax franchises, and it must be presumed that the way provided is the only way in which the state desires so to do.

*Billson, Congdon & Dickinson,* for defendant Duluth Street Railway Company.

Section 1530 provides an exclusive method for listing and valuing the property of corporations except railroad, insurance, telegraph, and banking corporations. If the property of one of the corporations described in that section is listed and assessed as therein provided, the value of its rights and privileges, commonly called franchises, will be found in the remainder. The share stock is a business photograph of all the corporate possessions and possibilities. People v. Coleman, 126 N. Y. 433; Adams Ex. Co. v. Ohio St. Aud., 166 U. S. 185, 221; Board of Co. Commrs. of Rice Co. v. Citizens Nat. Bank, 23 Minn. 280. If the franchises are assessed and taxed as "bonds and stock" under this section, they cannot be assessed and taxed again as franchises under section 1524. State v. Rand, 39 Minn. 502, 509; State v. St. Paul U. D. Co., 42 Minn. 142, 145; Board of Co. Commrs. of Rice Co. v. Citizens Nat. Bank, supra. Defendant is a railroad company, and as such taxable only on its gross receipts.

MITCHELL, J.

1. The facts in all these cases (which were brought to enforce the collection of personal taxes) being essentially the same, it will be sufficient to state those in the case against the Duluth Gas & Water Company:

This is a domestic corporation organized to manufacture gas for public and private consumption, and to furnish water to the inhabitants of the city of Duluth, which is its principal place of business. It is not, and never has been, the owner of any annuities, royalties, or patent rights; and the only franchise it has ever owned, except the franchise to be a corporation, is the right and privilege, under an ordinance of the city, to lay its pipes under and along the public streets of the city, and to maintain and operate the same for the purpose of furnishing gas and water for public and private consumption. Neither the company nor any of its officers listed its personal property for taxation during the year 1897, and it failed and refused to make any statement or return under either section 1524 or 1530, G. S. 1894. Thereupon the city assessor made and returned a statement of its personal property for taxation, and of his assessment and appraisal of the value thereof, on June 26, 1897, and filed the same in the office of the county auditor, whereby and wherein he listed and returned as personal property belonging to the company on May 1, 1897, the following (the return being made upon a blank of the form contained in section 1524, and the only items in the blank under which property was assessed being Nos. 1, 5, 10, 14, 18, and 27):

| | | |
|---|---|---|
| 1. Horses three years old and over, assessor's valuation | $120 | 00 |
| 5. Wagons and carriages, four........................ | 100 | 00 |
| 10. Household and office furniture of all descriptions... | 385 | 00 |
| 14. Franchises, annuities, royalties, and patent rights.. | 125,000 | 00 |
| 18. Mfrs. tools, implements, machinery, engines, boilers, gas mains, etc................................. | 175,000 | 00 |
| 27. The value of all other articles of personal property not included in preceding 26 items, water mains, etc. ........ ...................................... | 325,000 | 00 |
| Total value of all of the items as determined by the assessor for taxation........................$625,605 | | 00 |

The words "gas mains," in item 18, and "water mains," in item 27, were written in after the prior printed words in the blank.

The assessor never attempted to make any return of the property of the company pursuant to the provisions of section 1530 of the statutes; and in making the above return he did not take into con-

sideration, or ascertain, the amount of the paid-up capital stock of the company, or its indebtedness; nor did he reach the amount by deducting the indebtedness of the company, exclusive of current expenses, from the capital stock, nor by deducting the indebtedness of the company, exclusive of current expenses, and the value of its real and personal property, from the actual or the market value of its stock, but put the valuation of said franchises upon his own esti-mate, as best he could, as though they were an item of tangible per-sonal property. The assessment, return, and valuation as thus made by the assessor were not changed by the board of review of the city of Duluth. The authorized capital stock of the company was one million dollars, and the amount of its paid-up capital stock was $679,050, but this had no value, either market or actual. The total indebtedness, except for current expenses, excluding from such ex-penses the amount paid for improvements on the property during the current year, was over $1,800,000. This indebtedness was in excess of the value of its real and personal property, and of its shares of stock. All the personal property which the company owned was included in the return of the assessor.

In August, 1897, the county board of equalization raised the valuation of the personal property of the company $125,000, in a lump sum, determining by resolution that such an increase should be made on items Nos. 18 and 27, but not apportioning the increase between the two; and thereupon the county auditor, without any other or more specific authority from the county board, added $43,750 to item 18, and $81,250 to item 27. The board of equaliza-tion made this increase without any evidence being introduced upon which to act, and without any examination of the property of the company at that time or for that purpose, and without examina-tion or inquiry as to the amount of the company's indebtedness or the amount of its capital stock.

Upon this state of facts, the trial court has certified up two ques-tions:

(1) Were the franchises of the company hereinbefore described, to wit, to be a corporation, and to lay and maintain its pipes in the public streets of the city for the purpose of distributing and supplying water and gas, subject to taxation, as such, as a separate

item of personal property, under the provisions of section 1524 of the statutes, or can it be reached for taxation only through assessments on the stock pursuant to the provisions of section 1530?

(2) Was the increase on items 18 and 27, made in the manner above described, valid under the laws of this state?

Without stopping to discuss at length the whole scheme of taxation provided in our tax laws, an analysis and comparison of its various provisions satisfy us that the legislature intended G. S. 1894, § 1530, to be the exclusive method of listing and taxing the property of all corporations and companies falling within the purview of that section. That section nowhere provides for the listing and taxation of corporate franchises, as such, as a separate and distinct item of personal property. The method there provided for is the very common and most equitable and efficient one,—of reaching the franchises and other intangible property for purposes of taxation through the capital stock. The "capital stock" (using the term in the sense in which it is evidently used in this section) is, as has been said, "a business photograph of all the corporate possessions and possibilities," and represents its business opportunities and capacities as well as its tangible assets. They enter into, and go to make up, the value of the stock. It is well settled that these franchises, although neither visible nor tangible, are property which may be taxed the same as any other property. Hence a very common method of taxing corporations and stock companies is to list and assess all their tangible property, real and personal, the same as the like property of other persons is listed and assessed, and also list and assess the capital stock at its actual or market value, less the value of its tangible real and personal property otherwise specifically listed and assessed. This system reaches every element of property value owned by the corporation, and at the same time avoids double taxation. This is clearly the scheme of taxation contemplated and provided for by section 1530, with one exception, which will be considered hereafter.

It is evident, in view of the entire scheme, that the value of the personal property in the seventh item, which is to be specifically listed and assessed, and deducted from the market or actual value of the shares of stock, refers solely to tangible personal property,

and does not include franchises. It would be wholly unreasonable to assume that the legislature would adopt the scheme of reaching the franchises and other intangible property of a corporation through the taxation of its capital stock, and at the same time turn around and specifically tax as a separate item of personal property, and deduct from the value of the stock, the very intangible property which they were endeavoring to reach through the taxation of the stock. Sections 1524 and 1530 must be read and construed together; and, doing so, the fourteenth subdivision of the former section, providing for listing and assessing franchises as a specific and separate item of personal property, was intended to apply only to franchises owned by private persons or others not falling within the provisions of section 1530.

Thus far there can be no constitutional objection to the system of taxation provided for in section 1530, and no question but that the franchises of these corporations were not intended to be made subject to taxation as a separate item of personal property, under section 1524, but only taxable through the assessment of the capital stock, pursuant to the provisions of section 1530. But in the latter section the legislature has gone a step further, and provided for the deduction from the value of the capital stock not merely of the value of the tangible corporate property otherwise specifically taxed, but also the total amount of all indebtedness of the association, except indebtedness for current expenses. Such a provision is in direct conflict with the constitutional requirement that all taxes shall be as nearly equal as may be, and that all property on which taxes are to be levied shall have a cash valuation, and be equalized and uniform throughout the state. The indebtedness presumably affects the value of the stock as directly as do the assets of the corporation. The former depreciates, while the latter appreciates, its value. The practical effect of this provision is to allow a double deduction of the amount of the corporate indebtedness. It would necessarily result in inequality of taxation, not only as between the associations themselves falling within the provisions of section 1530 (owing to differences in their financial condition), but also as between all such associations and persons or associations taxed under the general provisions of the tax law, who

are not permitted to deduct their indebtedness from the value of franchises owned by them. See Henderson v. Com., 99 Ky. 623, 31 S. W. 486.

This presents the important question whether the invalidity of this provision renders the whole of section 1530 invalid, or whether its remaining provisions are valid notwithstanding the invalidity of this one provision. Without entering into any extended discussion of the rules governing the question when a statute may be held void in part and valid in part, we may refer to a few facts and practical considerations peculiarly applicable to the present case. In the first place, if the whole of section 1530 is held invalid, the only method by which any part of the intangible property of these corporations or associations could be reached for taxation would be under the provisions of the fourteenth subdivision of section 1524,—a system much less complete and equitable than that provided by section 1530, with the invalid provision omitted, and one which it is evident the legislature never actually intended to apply to the corporations and associations falling within the purview of section 1530. Again, while it cannot be denied that the legislature intended the provision for deducting the indebtedness from the value of the capital stock to be a part of the system of listing and assessing the property of these corporations and associations, yet this provision is easily separable from the other provisions of the section. What would remain would constitute a complete system of taxation, fully capable of being executed in accordance with what we think was the apparent legislative intent.

The fact that this void provision is in the same section with other provisions is not important, for the distribution into sections is purely arbitrary. The test is, rather, whether the provisions are so essentially and inseparably connected and interdependent that the one may not operate without the other, or that it is impossible to suppose that the legislature would have passed the one without the other. There is no such essential and inseparable connection or interdependency in this case. The other provisions will operate, and can be executed, with this invalid provision stricken out. Neither is there anything to justify a court in holding that the legislature would not have enacted the statute with this obnoxious

provision omitted. The evident intention was to reach for taxation the franchises and other intangible property of these corporations and associations as effectually and completely as possible. This the legislature thought could be best accomplished by listing and assessing the value of the stock, which, as already suggested, represents every element of property value, tangible and intangible, owned by corporations or associations; but, in enumerating the deductions to be made, they erroneously included their indebtedness, presumably because they failed to perceive that this had already entered into, and gone to fix, the value of the stock, or that such a deduction would necessarily result in inequality of taxation. But, with this deduction omitted, what remains will effect the full and fair taxation of all the intangible property of these corporations and associations,—the very purpose which the legislature apparently had in mind.

For these reasons our conclusion is that the remainder of the section should be held valid, notwithstanding the invalidity of the objectionable provision. The result is that the franchises of the defendants could be taxed only through the taxation of their stock in the manner provided in section 1530.

The method adopted by the county board of equalization in increasing the valuation of items 18 and 27, and by the county auditor in apportioning the increase between the two items, may have been irregular; but the defendants are not in position successfully to object, for the reason that it is neither alleged nor shown that they are at all prejudiced thereby. There is no claim that there has been an overvaluation of either item.

2. The case of the Duluth Street Railway Company presents a question not involved in the other cases, viz. is it taxable as a railroad company, under Laws 1887, c. 11, § 1 (G. S. 1894, § 1669); that is, by taxing it a percentage on its gross earnings?

Assuming, without deciding, the validity of this act, it applies only to what are usually known as ordinary commercial railways, and not to street railways. This is the practical construction which has always been placed on this statute by both the state and the street-railway companies. The correctness of this construction was

assumed without question by this court in State v. District Court of 11th Jud. Dist., 54 Minn. 34, 55 N. W. 816. All through our statutes the legislature has uniformly, so far as we have discovered, used the word "railroad" or "railway," when unqualified, as referring exclusively to ordinary commercial railroads, while, on the other hand, when they have intended to refer to street railroads they have qualified the word "railroad" by the prefix "street." See Funk v. St. Paul City Ry. Co., 61 Minn. 435, 63 N. W. 1099. Of late, street-railway companies have been gradually extending somewhat the sphere and character of their operations. This fact may render it rather difficult in some few cases to determine to which class a particular road belongs, but it does not obliterate the inherent difference between the main purposes and functions of the two classes. Speaking generally, a street railway is local, derives its business from the streets along which it is operated, and is in aid of the local travel upon those streets, while a commercial railway usually derives its business, either directly, or indirectly through connecting roads, from a large area of territory, and not from the travel on the streets of those cities, either terminal or way stations, along which they happen to be constructed and operated. In fact, so far from being an aid or advantage, they are a positive impediment, to the travel on such streets. Hence it is held that the one constitutes an additional servitude on the street, while the other does not. Carli v. Stillwater St. Ry. & Tr. Co., 28 Minn. 373, 10 N. W. 205.

The Duluth Street Railway Company was organized under G. S. 1894, c. 34, tit. 1, and the acts amendatory thereof. The general nature of its business, as stated in its articles of association, is to construct, maintain, and operate railways in the streets and highways of the city of Duluth and its suburbs, including Lakeside, Lester Park, West Duluth (all or most of which are now parts of the city of Duluth), and in the roads connecting the same in St. Louis county, and over any other lands in St. Louis county upon which the right to do so may be acquired by it by purchase, condemnation, or otherwise. Certain additional powers were granted to it by Sp. Laws 1881 (Ex. Sess.) c. 200, entitled "An act confirming [conferring?] certain rights upon the Duluth Street Railway Com-

pany." By an ordinance of the city of Duluth, it was granted the right to construct and operate an inclined street railway in the city, and by another ordinance of the city it was granted the right to construct and operate street railways in the village of West Duluth, which had become a part of the city of Duluth. While the defendant still owns all the franchises thus granted, the entire extent to which it has exercised them is, as found by the court, to own and operate "a passenger railway line in the streets of the city of Duluth sixteen miles in length." This we construe as meaning the aggregate length of all its lines in the streets of the city. So far as appears, it has constructed and is operating its road in the same manner as street railroads are usually constructed and operated,—in aid of, and deriving its business from, the local travel on the streets of the city. While the defendant may possess some unexercised powers not ordinarily conferred upon street-railway companies, yet it is perfectly apparent that it is in all essential respects a "street," and not a "commercial," railroad. Therefore the gross-earnings tax law of 1887 does not apply.

These proceedings are each and all remanded, with directions to the court below to disallow in each case that part of the tax assessed upon "Item 14," entitled "Franchises, annuities, royalties, and patent rights," and to render judgment in favor of the state for the remainder of the taxes as assessed.

CANTY, J.

I concur. After striking out subdivision 5 of section 1530 as unconstitutional, the rest of the section may, in my opinion, be allowed to stand.

In my opinion, the legislature may provide for deducting the corporate indebtedness from the value of such intangible property as franchises and good will, when listing such intangible property for taxation. That will be the result of rejecting said fifth subdivision as unconstitutional, and permitting the rest of the section to stand, because, in giving a market value to the stock (see fourth subdivision), the public deducts the corporate indebtedness. In my opinion, the legislature has, under the constitution, more latitude in providing for the assessment of such intangible property

than it has in providing for the assessment of tangible real and personal property, and, as before stated, may provide for assessing only the balance of such intangible property after deducting the corporate indebtedness. But by the scheme proposed by section 1530 the corporate indebtedness is deducted twice,—once by the public, in giving a market value to the stock, and once more by virtue of the fifth subdivision. Therefore the scheme is unconstitutional, because, where there is no corporate indebtedness, it taxes the franchises and good will to their full value, but where there is corporate indebtedness it deducts double the amount of such indebtedness from the value of such intangible property. If the legislature will tax such intangible property at all, it must, as far as it is reasonably practicable to do so, tax it uniformly. It is this double deduction of the corporate indebtedness, as distinguished from single deduction, which is unconstitutional; and, while I have had some doubt about it, I am of the opinion that the provision for such double deduction may be rejected as unconstitutional, and the rest of the section allowed to stand.