State of Nebraska, ex rel. William G. Shriver et al., v. Myron D. Karr et al.

Filed April 23, 1902. No. 12,541.

1. Equalization: Metropolitan Cities. Under section 63 of the act incorporating metropolitan cities it is the duty of the city council, sitting as a board of equalization, upon proper complaint duly filed, to hear evidence, consider questions of comparative values and equalize assessments.

2. Franchises: Corporate Indebtedness: Constitution. Section 1, article 9, of the constitution, requires that franchises of corporations shall be assessed for taxation without deducting corporate indebtedness from the value of such franchises.

3. Revenue Act: Corporate Indebtedness: Actual Value of Stock: Constitution. That part of section 32 of the revenue act which requires the assessor to deduct the amount of the corporate indebtedness from the actual value of the shares of stock to

determine what shall be assessed as capital stock, is unconstitutional and void.

4. Corporation: CAPITAL STOCK: MARKET VALUE: VALUE OF FRANCHISE: TANGIBLE PROPERTY: RULE. When capital stock of a corporation has no market value, the "actual value," in the sense in which the words "capital stock" are used in the statute, is found by adding the value of the franchises of the corporation to the value of its tangible property. From this should be deducted the value of the real and personal property which are assessed as such, and the remainder is the value of the capital stock for assessment.

5. Assessment of Property: FAIR VALUE: BOARD OF EQUALIZATION: COMPLAINT: EQUALIZATION: PROCEDURE. The statute requires that all property be assessed at its fair value, but this does not prevent the board of equalization from equalizing assessments when property in general in the city has been assessed at a certain percentage of its fair value; and, upon complaint that the property or franchise of a person or corporation is assessed at a less proportion of its value than the percentage of value employed as a basis for assessing the property in general in the city, the board may equalize assessments by raising the assessment complained of to the same proportion of value at which property in general in the city is assessed.

ORIGINAL application for a writ of mandamus to compel the respondents as members of the city council and board of equalization of the city of Omaha to reconvene and consider complaints of the relators alleging inequalities in the assessment of taxes for the year 1902. Opinion of referee follows opinion of court. *Writ awarded.*

*James H. McIntosh,* for relators.

*W. J. Connell, W. W. Morsman, John L. Webster* and *George E. Pritchett, contra.*

SEDGWICK, J.

The relators obtained an alternative writ of mandamus from this court, directed to the respondents, as members of the city council and board of equalization of the city of Omaha, to compel them to reconvene as a board of equalization and consider and act upon the complaints of the relators alleging inequalities in the assessment of taxes for the year 1902. The respondents made return and answer

to the writ, and a referee was appointed by this court to hear the evidence and report findings of fact and conclusions of law.* Upon the filing of the referee's report the respondents filed exceptions to his findings of· fact, and to his conclusion that the costs ought to be taxed against respondents, and the relators filed exceptions to certain of his conclusions of law.

It is alleged in the alternative writ that "said tax commissioner duly completed said assessment roll for said 1902 city taxes, and duly transmitted the same to the city council for equalization; that by said assessment roll so submitted to said city council for equalization the personal property of said Omaha Street Railway Company was assessed at $550,000, of said Omaha Water Company at $575,000, of said Omaha Gas Company at $400,000, of said Nebraska Telephone Company at $109,310, and of said New Omaha Thomson-Houston Electric Light Company at $117,500; that no valuation or assessment· whatever was placed upon, or made against, the franchises in said city of any one of said corporations, but said several franchises were omitted from said assessment, except as to said electric light company, as aforesaid, although each and all of said franchises are, and then were, of great value, that of said street railway company having a fair cash value of, to wit, $4,000,000, of said water company of, to wit, $1,000,- 000, of said gas company of, to wit, $1,050,000, of said telephone company of, to wit, $1,000,000, and of said electric light company of, to wit, $140,000, that said 1902 assessment was made upon property generally in said city, except the property of said public-service corporations, on a basis of forty per cent. of its fair cash value; that said assessment upon the property of said five corporations was, and is, about ten per cent. of the fair cash value of their property and franchises, as will hereinafter more fully appear"; that the relators duly filed written complaints with the board of equalization to procure an equalization of the assessment of the property and franchises

*For referee's opinion see p. 524.

of said corporations, and that the board adjourned without duly hearing and considering these complaints.

The referee, in his report, after stating at some length the facts found by him from the evidence in regard to the action of the board upon the said complaints, finds "that the action of the board of equalization overruling the complaints filed upon procurement of the Real Estate Exchange did not estop the relators with reference to their five complaints, and was in no sense a matter of adjudication which forbade inquiry into the merits of the complaints of said relators. Upon said five complaints I find, further, that the action of the board in fixing a time for the hearing of the complaints by relators was a sanction of the sufficiency of said complaints in form and substance, and that the conduct of Hascall, Mount, Trostler, Whitehorn and Karr, who alone have answered in this case, was capricious, willful and arbitrary with respect to the complaints filed by the relators and that thereby said relators were deprived of the right to have reviewed the proceedings of the said board of equalization with reference to their above complaints by error proceedings, for the want of a final judgment, and that therefore, irrespective of the final result of this action, because of other considerations hereafter to be set forth, the costs of the case should be taxed against said Isaac S. Hascall, David T. Mount, Simon Trostler, William B. Whitehorn and Myron D. Karr, and judgment rendered accordingly." This finding is excepted to by the respondents as not being supported by the evidence. We do not find it necessary to comment at large upon the evidence. It is sufficient to justify the findings of the referee, and the exceptions to the findings of fact by the referee are therefore overruled.

The referee's conclusions of law, which are excepted to by the relators, are as follows:

"First. The manner in which companies and associations incorporated under the laws of this state (except insurance companies) shall be assessed, is prescribed by section 32, chapter 77, Compiled Statutes, and this method I

find is exclusive of any other method. It is, however, abortive, if not unconstitutional, as to the four corporations, exclusive of the telephone company, which has no debt; for it requires the market or real value of the incorporate stock to be assessed after deducting corporate indebtedness, and this corporate indebtedness is twice deducted,—once in fixing the market or real value of the stock and again by an actual subtraction required by the statute.

"Second. The alternative writ, even as amended, shows that the basis of valuation for assessment purposes in Omaha is forty per cent. of the real value of all property assessed, except the property of the said corporations, and its mandate requires the respondents to ascertain and employ the basis employed generally, and to bring the property of the five public-service corporations above referred to to that standard. By sections 4 and 5, article 1, chapter 77, Compiled Statutes, personal and real property is required to be assessed at its fair value. The peremptory writ must follow the alternative writ, and thereby the respondents would be required to violate the express provisions of sections 4 and 5 aforesaid if the averments in the alternative writ are true.

"Third. It is extremely doubtful whether the city council of the city of Omaha, sitting as a board of equalization, has power to review the proceedings of the board of review. I suggest that this is doubtful, without definitely committing myself on that proposition. I do not hesitate, however, to recommend, and do recommend, that in the exercise of its discretion this court shall refuse to issue a peremptory writ, and that it dismiss this action at the costs of the answering respondents, Isaac S. Hascall, David T. Mount, Simon Trostler, William B. Whitehorn and Myron D. Karr. All of which is respectfully submitted."

It was the duty of the board of equalization to hear and determine the merits of the complaints in question. The assessment is made by the commissioner and his deputies, and is reviewed and completed by the board of review.

When it is submitted to the city council as a board of
equalization it becomes the duty of the board, under the
statute, to equalize the assessment. Then the citizens have
their first opportunity to complain of inequalities, if
any exist, and to have them corrected. Section 63 of
the act incorporating metropolitan cities provides: "The
council shall have power to act as a board of equali-
zation for the city to equalize all taxes and assesments,
and to correct any errors in the listing or valuation
of property, and to supply any omissions in the same,
but shall sit only after reasonable public notice." Com-
piled Statutes, ch. 12a. The board can not "equalize all
taxes and assessments" without considering comparative
values. The purpose of equalization is to "bring the
assessments of different parties to the same relative
standard so that no one may be compelled to pay a dispro-
portionate part of the tax." Cooley, Taxation, 421. The
right of a taxpayer to make complaint before the board and
have corrected inequalities in the assessments which re-
sult in increasing his burden of taxes is a substantial right
and can not be denied him. The board must receive his
complaint, hear evidence upon the question of inequalities
in the assessments presented thereby, determine the facts,
and equalize the assessments. In so doing it is a judicial
tribunal, and, as far as possible, must be governed by the
ordinary rules of evidence. *State v. Dodge County*, 20
Nebr., 595. It is clear from the facts found by the referee
that the relators have been deprived of a right given them
by the statute; but the referee concludes that the writ
should not be issued, for the reasons given in his conclu-
sions of law above stated. Section 32, art. 1, of the revenue
act requires statements of these corporations made to the
assessor to set forth particularly: "First—The name and
location of the company or association. Second—The
amount of capital stock authorized, and the number of
shares into which such capital stock is divided. Third—
The amount of capital stock paid up. Fourth—The mar-
ket value, or if no market value then the actual value of

the shares of stock. Fifth—The total amount of all indebtedness, except the indebtedness for current expenses —excluding from such expenses the amount paid for the purchase or improvement of property. Sixth—The assessed valuation of all its real and personal property (which real and personal property shall be listed and valued as other real and personal property is listed and assessed under this chapter),"—and provides that "the aggregate amount of the fifth and sixth items shall be deducted from the aggregate value of its shares of stock, as provided by the fourth item, and the remainder, if any, shall be listed by the assessor in the name of such company or corporation as capital stock thereof." Compiled Statutes, ch. 77, art. 1.

When the capital stock of a corporation has a market value, that value may be taken as a basis to ascertain the value of its intangible property, since the value of the stock is the net value of its assets, and is found by deducting its indebtedness from the gross value of its tangible and intangible property; but when the capital stock has no market value it can not be used as a basis in ascertaining the value of the assessable property and franchises of the corporation, since the value of the intangible property must be ascertained before the true value of the stock can be determined in the sense in which the term is used in the statute quoted. But our constitution provides, in express terms, that the franchises of corporations must be assessed for taxation; and when, as in this case, it does not appear that the capital stock has any market value, its assessable value, after deducting the tangible property of the corporation, is the same as the value of its franchises. The legislature may direct the manner of ascertaining the value of property and franchises; but it can not prescribe rules that prevent the assessment of the property and franchises of corporations on an equality with property in general in proportion to value.

The constitution (art. 9, sec. 1) provides: "The legislature shall provide such revenue as may be needful, by levy-

ing a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property and franchises, the value to be ascertained in such manner as the legislature shall direct." This provision of the constitution does not allow the indebtedness of individuals or corporations to be deducted from the true value of property or franchises in determining the value of such property and franchises for taxation, and if the "manner" of assessment prescribed by the legislature, when strictly pursued, would result in so doing, and would not result in levying a tax "by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property and franchises," it violates the constitution, and is so far invalid. *State v. Duluth Gas & Water Co.*, 76 Minn., 96, 78 N.W. Rep., 1032. By the terms of the statute the fourth item is the market value; if no market value, then the actual value of the shares of stock. This actual value of stock which has no market value can be ascertained only by deducting the corporate indebtedness from the gross value of the corporate property and franchises; and, when it is so found, by the terms of the statute, the indebtedness of the corporation is to be again deducted. But this will not do. Our constitution requires the property and franchises to be assessed; and if the corporate indebtedness is deducted it might, and actually would, in case of some of the corporations in question herein, wholly prevent the assessment of their franchises. The individual is not allowed to deduct his indebtedness from the value of his property for assessment purposes. If the indebtedness of a corporation is deducted from the value of its franchises, it would not pay taxes thereon in proportion to the value thereof. This value is to be ascertained in such manner as the legislature shall direct, but it can not require that after the value has been ascertained it shall be offset by indebtedness. This would violate the constitutional provision.

In *State v. Duluth Gas & Water Co., supra,* it was held that the requirement of the statute that the indebtedness

be deducted from the value of the capital stock should be rejected as unconstitutional, and the remaining directions of the statute substantially followed. This seems to be the only way in which the mandate of the constitution can be obeyed and at the same time the valid provisions of the statute be complied with. The assessor, then, should have ascertained the actual value of the capital stock by adding the value of the corporate franchises to the value of the tangible property of the corporations. From the value of the capital stock so found should be deducted the value of real and personal property already assessed, and the remainder would be the value of the capital stock for assessment. The board of equalization, upon hearing the complaints of the relators, should have found whether the value of the capital stock, ascertained as above indicated, had been so assessed that the corporation would be required to pay a tax thereon in proportion to such value, as compared with the values of property in general in the city as assessed for the same tax.

The referee's second conclusion of law is that the peremptory writ must follow the alternative writ, and, as the alternative writ shows that the basis of valuation for assessment purposes in Omaha is forty per cent. of the real value of the property assessed, to issue the peremptory writ as prayed would be to require respondents to violate the express provisions of the statute.

The statute provides: "No other pleading or written allegation is allowed, than the writ and answer. These are the pleadings in the case, and have the same effect and are to be construed and may be amended in the same manner as pleadings in a civil action; and the issues thereby joined must be tried, and the further proceedings thereon had in the same manner as in a civil action." Code of Civil Procedure, sec. 653. And section 647 prescribes the form of the alternative writ, and provides that "the peremptory writ must be in a similar form." No doubt the particular thing commanded by the peremptory writ must be found in "a similar form" in the alternative writ; that is, nothing

can be contained in the peremptory writ that is not embraced in the alternative writ. The liberal rules of amendments provided by the Code apply to this proceeding. If the relators are entitled to the thing commanded in the alternative writ, no doubt verbal inaccuracies in the writ might be amended to conform to the proofs. But the command of the alternative writ to "ascertain from the evidence the standard of valuation adopted and employed by the tax commissioner, his deputies, and the board of review of said city in making said assessment of all taxable property within said city for said 1902 taxes, and that you bring the amount of the several assessments of the personal property and franchises of said several corporations within said city and subject to taxation therein for said 1902 taxes to said standard," is substantially a command to investigate values and equalize the assessment of property so that the corporations complained of shall pay a tax in proportion to the value of their property and franchises. In *State v. Osborn*, 60 Nebr., 415, it was said: "If the property of one citizen is valued for taxation at one-fourth its value, others within the taxing district have the right to demand that their property be assessed on the same basis." From the context and the subject-matter being considered, it is manifest that the doctrine intended by the court was that when the property generally in the city is assessed at a certain proportion of its actual value any person whose property is assessed at a greater proportion of its actual value has ground for complaint, and so, when the property of one person is assessed at a less proportion of its value than the proportion of value at which property in general in the city is assessed, any taxpayer who is injured thereby has cause of complaint. The board of equalization is not so much to consider methods by which the assessor may have reached his conclusion as it is to consider the results of the assessment as returned. If the assessment is unequal, it is the duty of the board, on proper complaint and evidence, to so equalize the assessment that every person and corporation shall pay a tax in proportion

to the value of his, her or its property and franchises, and no other meaning can be given to the command to ascertain the basis employed generally and bring the amount of the several assessments of the personal property and franchises of the several corporations complained of to that standard, when construed with the allegations and the other commands of the writ.

It is therefore ordered that the peremptory writ issue as prayed. Costs taxed to respondents, Isaac S. Hascall, David T. Mount, Simon Trostler, William B. Whitehorn and Myron D. Karr. Referee allowed $534.70, to be taxed as a part of the costs in the action.

WRIT AWARDED.

### Opinion of Referee.

The proper scope of a report as referee precludes extended discussions, for such a report should present only ultimate conclusions of law and fact. In the trial of this case, there were discussed, very ably and at great length, certain principles which I deem it my duty to present to the court in elucidation of my report, and I adopt this as the least objectionable means of so doing.

The most important question presented, was as to the manner in which corporations should be assessed so as to include the value of their franchises; since, in cases of public service, corporations like street railway companies, the franchise to use the streets is of paramount value, and yet, by reason of intangibility, the value of this franchise is very difficult of ascertainment. It is provided by section 32, article 1, chapter 77, Compiled Statutes, in effect that the value of the capital stock of all companies and associations except insurance companies shall, for the purposes of assessment, be ascertained by deducting from the market value of the entire stock the assessed value of the tangible personal and real property, assessed as is the property of individuals, and, by deducting also from said market value what may be designated as the fixed indebtedness of the company or association to be assessed. The deduction of

the last item, the fixed indebtedness is clearly a mistaken, if not an unconstitutional, provision, as will be very clear upon reflection or upon a consideration of the cases bearing on this proposition. Let us take, for example, a corporation whose capital stock is of the value of $150,000. If it has no indebtedness, its stock will be taxed at that amount. Under section 128, chapter 16, Compiled Statutes, this corporation might incur an indebtedness of two-thirds the amount of its capital stock, that is to say if, for the purpose of assessment, its indebtedness might be deducted, the assessable value of its capital stock would be but $50,-000. Again, let us suppose three individuals jointly own land of the value of $150,000. If there is a mortgage against this land of $100,000 in amount, they, as joint owners, would be compelled to pay taxes without reference to their indebtedness. Suppose, however, the three individuals form a corporation and in its name acquire title to land of the value of $150,000. One statute would permit this corporation to mortgage the land to the extent of $100,000, and another statute would exempt from taxation such indebtedness, leaving but $50,000 in value subject to taxation. This is manifestly absurd, and this absurdity is intensified if we consider what would result from taxing on the basis of forty per cent. of the valuation as, in the alternative writ, the basis for assessment purposes is charged to be. A corporation having stock of the market value of $150,000, would be assessed at the artificial valuation of forty per cent. thereof, that is, $60,000. If its indebtedness was $100,000, as legally it might be, there would be $40,000 less than nothing to tax. The truth is, that the market value of the stock is properly reached by adding to the value of the stock the indebtedness which is a first lien on the property, and its earnings. In other words, the dealer in shares of stock pays for such shares with reference to the indebtedness of the corporation and thus it is deducted from the value of the stock in ascertaining the market value of the stock. Manifestly, therefore, this indebtedness should be added to restore the face

value of the stock—not subtracted again for the purpose
of assessment as required by section 32, chapter 77, Com-
piled Statutes. I shall now consider adjudged cases upon
the proposition I have just been discussing.

In *Adams Express Co. v. Ohio State-Auditor*, 166 U. S.,
185, 220, the opinion was delivered by Judge Brewer, in
the course of which he said:

Now, it is a cardinal rule which should never be for-
gotten that whatever property is worth for the purposes
of income and sale it is also worth for the purposes of
taxation. Suppose such a bridge were entirely within
the territorial limits of a state, and it appeared that the
bridge itself cost only $1,277,000, could be reproduced
for that sum, and yet it was so situated with reference
to railroad or other connections, so used by the travel-
ing public, that it was worth to the holders of it in
the matter of income $2,900,000, could be sold in the
markets for that sum, was therefore in the eyes of prac-
tical business men of the value of $2,900,000, can there
be any doubt of the state's power to assess it at that
sum, and to collect taxes from it upon that basis of
value? Substance of right demands that whatever be the
real value of any property, that value may be accepted by
the state for purposes of taxation, and this ought not to
be evaded by any mere confusion of words. Suppose an
express company is incorporated to transact business
within the limits of the state, and does business only
within such limits, and for the purpose of transacting
that business purchases and holds a few thousand dollars
worth of horses and wagons, and yet it so meets the wants
of the people dwelling in that state, so uses the tangible
property which it possesses, so transacts business therein
that its stock becomes in the markets of the state of the
actual cash value of hundreds of thousands of dollars. To
the owners thereof, for the purposes of income and sale,
the corporate property is worth hundreds of thousands of
dollars. Does substance of right require that it shall pay
taxes only upon the thousands of dollars of tangible prop-
erty which it possesses? Accumulated wealth will laugh
at the crudity of taxing laws which reach only the one and
ignore the other, while they who own tangible property
not organized into a single producing plant will feel the

injustice of a system which so misplaces the burden of tax-
ation. A distinction must be noticed between the construc-
tion of a state law and the power of a state. If a statute,
properly construed, contemplates only the taxation of
horses and wagons, then those belonging to an express com-
pany can be taxed at no higher value than those belonging
to a farmer. But if the state comprehends all property in
its scheme of taxation, then the good will of an organized
and established industry must be recognized as a thing of
value. The capital stock of a corporation and the shares
in a joint stock company represent not only the tangible
property but also the intangible, including therein all cor-
porate franchises and all contracts, privileges and good
will of the concern. Now, the same reality of the value of
its intangible property exists when a company does not
confine its work to the limits of a single state. Take, for
instance, the Adams Express Company. According to the
return filed by it with the auditor of the state of Ohio, as
shown in the records of these cases, its number of shares
was 120,000, the market value of each $140 to $150. Tak-
ing the smaller sum, gives the value of the company's prop-
erty taken as an entirety as $16,800,000. In other words, it
is worth that for the purposes of income to the holders of
the stock and for purposes of sale in the markets of the
land. But in the same return it shows that the value of
its real estate in Ohio was only $25,170; of real estate
owned outside of Ohio, $3,005,157.52, or a total of $3,030,-
327.52; the value of its personal property in Ohio $42,065;
of personal property outside of Ohio $1,117,426.05; or a
total of $1,159,491.05, making a total valuation of its
tangible property $4,189,818.57, and upon that basis it in-
sists that taxes shall be levied. But what a mockery of
substantial justice it would be for a corporation, whose
property is worth to its stockholders for the purposes of
income and sale $16,800,000, to be adjudged liable for
taxation upon only one-fourth of that amount. The value
which property bears in the market, the amount for which
its stock can be bought and sold, is the real value. Busi-
ness men do not pay cash for property in moonshine or
dreamland. They buy and pay for that which is of value
in its power to produce income, or for purposes of sale.

In *Porter v. Rockford, R. I. & St. L. R. Co.*, 76 Ill., 561, 588, this language was used:

There is a seeming injustice in taxing corporations which are largely indebted, and whose earnings are insufficient to pay the accruing interest, as is alleged to be the fact in the present case, to the full extent of the value of all their property and privileges, without regard to their indebtedness, yet it has never been the policy of the legislature to make any discrimination in favor of individuals on this account, and corporations can not claim an exemption from taxation when, under like circumstances, an individual would not also be exempt to the same extent. The mode of valuation adopted by the board of equalization assumes: 1st. That the value of the aggregate shares of capital stock is equal to the value of all the property, including the franchise, belonging to the corporation, when it is not indebted. 2d. That when the corporation is indebted, the indebtedness proportionally reduces the value of the shares of capital stock. 3d. That the value of the debt is determined by the value of that belonging to the corporation from which its payment can be enforced, so that however great the nominal amount of the debt, its actual value can never exceed that sum. To illustrate: where a corporation is free from debt, and the aggregate value of its shares of stock is, say, $150,000, it is assumed that the value of its capital stock, including its franchise, is $150,000. If the same corporation, still retaining the same property, is, however, indebted $50,000, this will reduce the aggregate value of its shares of stock to $100,000; but as the law does not exempt corporations or individuals from the payment of taxes on account of indebtedness, it would not be accurate to tax the corporation at this amount, because to do so would be to exempt it to the extent of its indebtedness. To ascertain, therefore, what would be the aggregate value of its shares of stock, if the corporation were free from debt, it is necessary to add the value of the debt to the value of the shares of stock. If the corporation is, in the given case, indebted $150,000, the shares of stock will be worth nothing, but the value of the debt will be $150,000, which is the value of that from which its payment can be enforced, and so, if the corporation is indebted in any greater sum the value of the debt will still be only $150,000.

The views above expressed were afterwards enforced in *Pacific Hotel Co. v. Lieb*, 83 Ill., 602, and in *State Board of Equalization v. People*, 61 N. E. Rep. [Ill.], 339. The case of *Henderson Bridge Company v. Commonwealth*, 99 Ky., 623, also recognizes as correct the proposition that the addition of fixed indebtedness to the market value of the stock is not a taxation of indebtedness but is just and proper. The case of *State v. Duluth Gas & Water Co.*, 76 Minn., 96, attempted partially to sustain statutory provisions like those contained in section 32, chapter 77, Compiled Statutes, by simply ignoring a deduction of the value of the fixed indebtedness. The concurring opinion of Judge Canty criticises the section of the Minnesota statute corresponding to our section 32 above noted because thereby the indebtedness of the corporation is deducted twice,—first, in ascertaining the value of stock; second, the deduction as required by said section. It seems to have escaped that court's notice, however, that if the latter deduction is omitted, there still remains the first deduction; a most obviously unjust discrimination, for no other taxpayer is allowed a deduction from assessments of real or personal property. In *State Railroad Tax Cases*, 92 U. S., 575, Judge Miller, for the court, said:

It may be assumed for all practical purposes, and it is perhaps absolutely true, that every railroad in Illinois has a bonded indebtedness secured by one or more mortgages. The parties who deal in such bonds are generally keen and far-sighted men, and most careful in their investments. Hence the value which these securities hold in market is one of the truest *criteria*, as far as it goes, of the value of the road as a security for the payment of those bonds. These mortgages are; however, liens on the road, and, taking precedence of the shares of the stockholder, may or may not extinguish the value of his shares. They must in any event affect that value to the exact amount of the aggregate debts. For all that goes to pay that debt and its interest diminishes *pro tanto* the dividend of the shareholder and the value of his share. It is therefore obvious, that, when you have ascertained the current cash value of

38

the whole funded debt, and the current cash value of the entire number of shares, you have, by the action of those who above all others can best estimate it, ascertained the true value of the road, all its property, its capital stock and its franchises; for these are all represented by the value of its bonded debt and of the shares of its capital stock.

At this point it may be profitable to note defects which have been actually found to exist in statutes like our own on the subject. In Michigan there was a statutory provision for the assessment of corporations very like section 32, chapter 77, Compiled Statutes,—the requirement as to deduction of indebtedness involving the same principles. In *Detroit Citizens' Street Railway Co. v. Common Council*, 85 N. W. Rep. [Mich.], 96, the fifth paragraph of the syllabus is as follows:

The special provision of Compiled Laws, section 3842, for the assessment of corporations in general, that the value of stock, less the real estate, should be assessed, as well as the cash value of all the personal property, less bona-fide indebtedness, is unconstitutional and void, since it would result in double taxation if there were no real estate and no debts; and besides, the provision as to deducting debts is invalid, because it does not conform to the usual method of deducting debts from credits only.

Section 27, article 1, chapter 77, Compiled Statutes, limits deductions on account of indebtedness in Nebraska to taxable credits, and not only should this fact be considered with reference to the foregoing language but it should be borne in mind in respect to the language of other cases hereinbefore referred to. As section 32, chapter 77, Compiled Statutes, now stands, it is applicable only to corporations formed within this state. The Omaha Water Company is not within this category, consequently there might be some other method adopted for its assessment, but I think a writ should not issue simply with reference to the assessment of this corporation for if forty per cent. is found to be the standard of valuation the claimed equalization could not be made as to this corporation for the rea-

son that the statute (Compiled Statutes, ch. 77, art. 1, secs. 4, 5) requires assessments to be on the basis of full valuation.

Again, the Nebraska Telephone Company is a domestic corporation, and has its principal office or place of business in the city of Omaha. Its stock and franchise should therefore be listed and taxed in that city. Compiled Statutes, ch. 77, sec. 8. It is stated in the brief submitted on behalf of said corporation that its lines extend into Iowa and South Dakota as well as into fifty-seven counties in this state. There is no special provision in our statutes to adequately meet these conditions. If this telephone company is assessed as the statute now requires the listing and taxation of its franchises and capital stock to be done, such listing and assessment must be in Omaha alone, notwithstanding the fact that the principal value of the company's property is probably owing to use of rural and urban public highways in fifty-seven counties in this state as well as the use of highways in the states of Iowa and South Dakota.

It has been held many times by the supreme court of the United States that the property of railroads, telegraph, sleeping car and express companies, engaged in interstate commerce, may be valued as a unit for the purpose of taxation, and that a proportion of the whole, fairly and properly ascertained may be taxed by the state in which it is situated. *Western Union Telegraph Co. v. Taggart,* 163 U. S., 1; *Pittsburg, C., C. & St. L. R. Co. v. Backus,* 154 U. S., 421; *Pullman's Car Co. v. Pennsylvania,* 141 U. S., 18; *Western Union Telegraph Co. v. Attorney General, Massachusetts,* 125 U. S., 530; *Delaware Railroad Tax,* 18 Wall. [U. S.], 206, 208; *Erie R. Co. v. Pennsylvania,* 21 Wall. [U. S.], 492. It would seem that the necessary authority for apportionment by legislative action is recognized in the above cases. In this state there has been no attempt to avail ourselves of that authority.

In argument it was suggested that if a writ should issue the equalization by the board of equalization, as to the

five public service corporations complained of, might be made at the fair cash value of the property and franchises of such corporations. But the relators have expressly pleaded that forty per cent. of the value is the standard adopted and employed as to all property in Omaha, except that of these five corporations, and the relators are estopped to deny the truth of the averments of their own pleading. *Foley v. Holtry,* 41 Nebr., 563; *McKee v. Wild,* 52 Nebr., 9. The constitution of this state empowers the legislature to "provide such revenue as may be needful, by levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property and franchises" and authorizes municipal corporations to be "vested with authority to assess and collect taxes, but such taxes shall be uniform in respect to persons and property within the jurisdiction of the body imposing the same." Constitution, art. 9, secs. 1 and 6. The relators are seeking to compel action and it is very obvious that they can not compel the enforcement of a valuation as to the property of these corporations two and one-half times the valuation conceded to be placed on other property within the same jurisdiction.

From the foregoing considerations I conclude that before the stocks of corporations, which include their franchises, can, be equitably and justly taxed, there must be legislation correcting the inefficiency and crudity of section 32, chapter 77, Compiled Statutes, in the respects indicated, and there should be such additional legislation as will apportion properly the taxation of corporations situated as are the Omaha Water Company and the Nebraska Telephone Company;—the one a company organized in another state; the other doing business in two other states, as well as in fifty-seven different counties in this state.

ROBERT RYAN, *Referee.*