# STATE v. MINNEAPOLIS & ST. PAUL SUBURBAN RAILWAY COMPANY.[1]

February 24, 1911.

Nos. 16,904, 16,905, 16,906, 16,907—(28, 29, 30, 31).

**Interurban railway — act of 1909.**

Whether a line of railway which is maintained and operated on the streets and highways of cities, villages, and towns, is an interurban railway, within the provisions of chapter 454, Laws 1909, does not depend alone on the power of the company to exercise the right of eminent domain.

**Franchise for railway in streets — local taxation.**

A corporation or person who makes application to the proper city, village, or town authorities for a franchise to construct, maintain, and operate a street railway upon the streets and highways of such municipal divisions, and in pursuance of such a franchise constructs, maintains, and operates upon the designated streets and highways a railway similar in all respects to ordinary street electric railways, is estopped from asserting, as against the right of local taxation, that such lines are not street railways, but constitute part of an interurban line, and subject to the gross earnings tax provision of chapter 454, Laws 1909.

**Same.**

Appellant company, although incorporated under the provisions of title 1, c. 34, G. S. 1894, with power to exercise the right of eminent domain, constructed and maintained and operated street railways upon the streets and highways of the city of Stillwater, the village of South Stillwater, and the towns of Baytown and Stillwater in Washington county, and the property of the company which is located in and used for the operation of said street railway lines was subject to local taxation.

**Interurban railway — gross earnings tax.**

A line of railway maintained and operated by appellant between the city of St. Paul and its power house in the city of Stillwater is not a street railway, but an interurban railway, subject to the gross earnings tax provided by chapter 454, Laws 1909.

**Same — exemption from local taxation.**

The taxes on all property of appellant company used for the operation of such interurban line, wherever situated, are paid by the tax on the gross earnings, and it is not subject to local taxation.

[1]Reported in 130 N. W. 71.

Four separate proceedings in the district court for Washington county to enforce payment of personal property taxes against the Minneapolis & St. Paul Suburban Railway Company, levied in the city of Stillwater, the village of South Stillwater, the town of Baytown and the town of Stillwater, and remaining delinquent on March 1, 1910. The substance of the answers is stated in the opinion. The cases were tried before Stolberg, J., who made findings of fact as stated in the fifth paragraph of the opinion, and as conclusion of law ordered judgment against defendant corporation. From the judgments entered pursuant to the order, defendant appealed. Remanded to determine the amount assessable against the street railway line operated within the city limits and to enter judgment for the amount so found.

*Milton D. Purdy, D. R. Frost* and *N. M. Thygeson,* for appellant.

*George T. Simpson,* Attorney-General, *Clifford H. Hilton,* Assistant Attorney General, and *John C. Nethaway,* County Attorney, for respondent.

Lewis, J.

In proceedings to enforce the payment of personal property tax as against the Minneapolis & St. Paul Suburban Railway Company in the city of Stillwater, Washington county, Minnesota, the personal property of the company, claimed to have been located within the city, was assessed in the amount of $2,417.45. Similar proceedings arose in the village of South Stillwater, and a tax was levied on the property of the company therein in the sum of $131.51, in the town of Baytown to collect the sum of $177.26, and in the town of Stillwater to recover the sum of $94.92. The answer of the company was the same in each proceeding, and the essential parts thereof necessary to consider are that the company was organized under the provisions of title 2, c. 34, G. S. 1894; that it was a railroad, within the meaning of chapter 454, Laws 1909 (R. L. Supp. 1909, §§ 1003 —1 to 1003–6, and that it has complied with the provisions of that law and paid into the state treasury four per cent. upon the amount of its gross earnings; that its railway, as operated in the city and village of South Stillwater, and in the towns of Stillwater and Bay-

town, is not a street railway, and therefore the attempt to assess its property locally and collect taxes thereon is without authority of law and void.

In the city of Stillwater case the original franchise, to which appellant succeeded, was granted by the city council of Stillwater to Thomas Lowry and C. G. Goodrich by an ordinance approved March 23, 1899, which provides that the grantees shall construct four lines of street railway within the city of Stillwater: First, a line commencing at the junction of Water and Chestnut streets, in the business center of the city, running thence westerly on Chestnut, Third, Laurel, North Owen, and Linden streets, and thence to the city limits. A second line, connecting with the above-mentioned line at Third and Chestnut streets, and running southerly, along Third and Burlington streets and Fourth avenue, to the southerly limits of the city. A third line, connecting with the above-mentioned line at the intersection of South Third and Churchill streets, thence over Churchill, South Greely, West Olive, South Owen, and Owen streets, to Linden street. A fourth line, connecting with the one last above described, on Fifth street, at the intersection of West Laurel street, thence on Fifth to Wilkin, and thence westerly on Wilkin to Williams street.

The ordinance provided that the grantees should have authority to construct Ys at certain points, to erect and maintain the necessary poles, columns, wires, conduits, and appliances which might be required in the construction and maintenance of such lines of street railways. The tracks were to be constructed on the established grades of the streets, steam and animal power were prohibited, and the fare was limited to five cents per passenger traveling on any of the lines to any point within the city limits. Cars were required to be run upon each of such lines every thirty minutes between the hours of six a. m. and eight o'clock p. m. It was a condition of the granting of the ordinance that the grantees should, as soon as practicable after accepting the same, apply to the proper authorities for a license and authority to construct and maintain a line of street railway from the terminus at the southerly limits of the city to some convenient point within the village of South Stillwater, and that

the fare for each passenger from the city limits to the village of South Stillwater should be five cents.

Authority to construct the street railway in the village of South Stillwater was conferred by an ordinance dated February 7, and accepted on February 27, 1905, which conferred upon appellant company authority and right to construct and maintain a single or double track street railway, with the necessary equipment, particularly over certain streets of the village specifically described. The general provisions with respect to the character of the tracks and supervision of the village are similar to those in the ordinance of the city of Stillwater. The fare was limited to five cents for each passenger, and steam power was prohibited.

Authority to construct the railway through the towns of Baytown and Stillwater was conferred by a resolution of the county commissioners of Washington county, dated November 17, 1904, and accepted November 30, 1904. This resolution conferred upon appellant company the right to construct, maintain, and operate, by any other than steam power, street railways, commencing at the intersection of the southerly limits of the city of Stillwater, at Oak street, and running thence along certain streets and avenues in Oak Park, and through a public highway known as the Baytown road, to the limits of the village of South Stillwater.

The trial court found that appellant had constructed and was operating the lines of street railway as above specified, and in addition thereto was operating a line of street railway from Wabasha street, in the city of St. Paul, over the St. Paul Street Railway Company's tracks, to a point in that city where the same was intersected by appellant's tracks, thence over its own right of way through Wildwood to the westerly limits of the city of Stillwater, and for a distance of thirty-six hundred feet farther east, to North Owen street and Laurel street, and thence over various other streets to Water street, which was the terminus. The court also found that five cars propelled by electricity were used in the service of the line from St. Paul to Stillwater, that two cars propelled by electricity were used over the so-called Wilkin street line to South Stillwater, and that one car propelled by electricity was used over the Owen

street line; that the company maintained an office in the city of Stillwater, at which the conductors on the Owen and Wilkin street lines in South Stillwater made their report and turned over the amounts collected; that the conductors on the St. Paul and Stillwater line made their reports and turned over their money at the office of the company in the city of St. Paul; that a fare of five cents was charged to all points upon each of the lines within the city limits of Stillwater and twenty-five cents per passenger was charged from the westerly limits of that city to Wabasha street in the city of St. Paul, and that a fare of five cents per passenger was charged from the limits of Stillwater to the village of South Stillwater. A subpower station and car barn was erected and maintained by the company within the city limits of Stillwater, near the intersection of South Owen and Laurel streets, at the easterly end of what is known as McKusick lake, and from this point all the power was furnished for each of such lines. Five cars were housed in the car barn at that point, and also a repair car, so called.

The distinction between the ordinary commercial railroad and a street railway has been definitely settled by the decision of this court. In Minneapolis & St. Paul Suburban Ry. Co. v. Manitou Forest Syndicate, 101 Minn. 132, 112 N. W. 13, we had occasion to review the preceding decisions upon the subject, and the distinction between the two classes of roads was stated as follows: "The difference does not depend upon the motive power employed, nor alone upon the character of the cars, rails, or equipment. The essential and predominant distinction is that a street railway is operated upon the street in aid of the street as a highway. A street railway is an improvement on the coach or omnibus, and is operated for the use and benefit of persons desiring to be transported along the street. It is local, and under special control of the municipality. A commercial railroad gathers its business at termini and operates from place to place."

Thus in Shea v. St. Paul City Ry. Co., 50 Minn. 395, 52 N. W. 902, it was said: "A street railway company has a mere right to use the street in common with the public generally. It is merely in aid of the identical use for which the street was created, and not

a new and independent one, and it is on that very ground that a street railway company is not required to pay compensation to the owners of abutting property." This distinction is emphasized in Newell v. Minneapolis, L. & M. Ry. Co., 35 Minn. 112, 27 N. W. 839, 59 Am. Rep. 303, where the railway company was operating a street railway within the city of Minneapolis and propelled its cars by means of steam power.

Chapter 454 maintains this distinction, and yet designates a class of railways which are not ordinary steam commercial railroads. It is evident that railways here designated are those known as "trolley lines," which are operated from place to place through the country, and which may or may not occupy the streets and highways. The object of such railway companies is not to carry on the local business of transporting passengers within the limits of municipalities, although it may be necessary to pass in or through them incidentally to its main business of transporting from place to place. The act differs radically from the gross earnings law, by which ordinary steam railways are governed, in this: Under that statute the entire percentage upon the gross earnings is paid into the state treasury, and is not distributed. By the present law the company is required to render an account to the tax commission of the gross earnings and income derived from the business contributed to the railway by each city, village, town, and taxing district in or through which it operates its lines, and the tax commissioners are required to apportion the total amount of tax received among such several municipal divisions in proportion to the amount of business furnished. But this does not classify such companies as street railways, nor give them authority to occupy public streets and highways.

A street railway does not impose such an additional servitude upon the street as to entitle the owner of the servient estate to compensation. The leading case on this question is Carli v. Stillwater Street Ry. Co., 28 Minn. 373, 10 N. W. 205, 41 Am. Rep. 290. But, if a corporation constructs and operates a street railway, it cannot escape local taxation because it was organized under title 1. In proceedings involving the collection of taxes in St. Louis county, the Duluth Street Railway Company was held not to be

taxable as a railroad company under the gross earnings law then in force. Although organized under the provisions of title 1, c. 34, G. S. 1894, with the right of condemnation, the company was operating a street railway within the city of Duluth. The court say: "While the defendant may possess some unexercised powers not ordinarily conferred upon street railway companies, yet it is perfectly apparent that it is in all essential respects a street, and not a commercial, railroad. Therefore the gross earnings tax law of 1887 [Laws 1887, p. 67, c. 11] does not apply." State v. Duluth Gas & Water Co., 76 Minn. 96, 78 N. W. 1032, 57 L.R.A. 63.

It is evident, then, that the character of the railways as constructed and operated by the appellant in the city, village, and towns above mentioned is not to be determined wholly by the corporate powers of the company. On the other hand, it does not follow that, because appellant is operating street railways upon the streets and highways of said city, village, and towns, their line, as constructed and operated between St. Paul and Stillwater is a street railway. Application was made to the city and village authorities and to the county commissioners for a franchise to construct and operate a street railway. License was granted for street railways to be operated upon the streets and highways. Street railways were constructed and maintained. The authorities had no power to subject the servient estate to the burden imposed by operating any other than a street railway. How, then, could the company or its grantors secure a street railway franchise, and, without taking the necessary steps, convert it into a right to maintain and operate a different kind of railroad? Appellant is bound by the representations made at the time the right was secured to occupy the streets and highways.

The line operated within the city of Stillwater from the power house on North Owen street to Water street, the line from Wilkin street to the village of South Stillwater, and the Owen Street line are street railways, within the exception provided in chapter 454. It follows that the property belonging to the company, which is located in the city, village, and towns, and which is used in such operation, is subject to local taxation. But the line which is operated between the power house and the city of St. Paul is not a street

railway, but is an interurban or trolley line, within the provisions of chapter 454.

The assessment on the personal property in the city was as follows:

| | | |
|---|---:|---:|
| Six cars, $2,500 | $15,000 | 00 |
| Switches and clocks | 30 | 00 |
| Office furniture | 120 | 00 |
| Manufacturing tools, implements, machinery, etc. | 19,690 | 00 |
| Bonds and stocks other than bank stock | 34,230 | 00 |
| Total | $69,070 | 00 |

Upon this amount was levied a tax of $2,417.25. According to the evidence, one car was used on the Owen street line, two on the South Stillwater line, and five on the St. Paul line. According to the findings, the company kept five ordinary cars and one repair car in the barn; but it does not appear how many of these were kept for service on the St. Paul line. There are no data in the record from which it can be estimated what portion of the property assessed was subject to taxation within the city, and what portion was used in connection with the St. Paul line. All property, of whatever nature and wherever situated, used in operating that line, is taxable under the gross earnings law. County of Ramsey v. Chicago, M. & St. P. Ry. Co., 33 Minn. 537, 24 N. W. 313; State v. Minnesota & International Ry. Co., 106 Minn. 176, 118 N. W. 679, 1007.

For this reason, the cause is remanded to the trial court to determine the amount assessable against the street railway line operated within the city limits, and to enter judgment for the amount so found.