IN THE MATTER OF PROCEEDINGS TO ENFORCE PAYMENT OF TAXES.

STATE v. MINNEAPOLIS & ST. PAUL SUBURBAN RAILWAY COMPANY AND ANOTHER.[1]

March 15, 1918.

No. 20,758.

**Railway — right of way not taxable when company subject to gross earnings tax.**

Defendant suburban railroad company operates certain lines of street and trolley railroad on the tracks of the Minneapolis street railway company along the city streets to Thirty-first street and Hennepin avenue. From this point to the city limits, a distance of two miles, the lines are operated, not along the city streets, but on the private right of way of defendant. It is *held* that this right of way is not subject to an ad valorem tax, the lines not being a street railway after they leave the city streets, and defendant being subject to a tax on the gross earnings of the lines after they enter upon such private right of way.

In proceedings in the district court for Hennepin county to enforce payment of real estate taxes remaining delinquent on the first Monday of January, 1916, the Minneapolis & St. Paul Suburban Railway Company and the Minneapolis & St. Paul Suburban Railroad Company served their joint and several answer. The matter was heard before Hale, J., who made findings and ordered judgment in favor of defendant railroad company. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Affirmed.

*John M. Rees,* County Attorney, and *Frank J. Williams,* Assistant County Attorney, for appellant.

*W. D. Dwyer,* for respondents.

BUNN, J.

Taxes for the year 1914 were levied against real estate owned by de-

[1] Reported in 166 N. W. 770.

fendant The Minneapolis & St. Paul Suburban Railroad Company. This real estate is the right of way of the company between Hennepin avenue and Thirty-first street and the city limits of Minneapolis, a distance of two miles. Defendant answered in the proceedings, claiming that it was a railroad company, that the real estate was used for railroad purposes and therefore was not subject to an ad valorem tax. Defendant operates three lines over this right of way, the Minnetonka line extending from Sixth street and Hennepin avenue to Excelsior and beyond on Lake Minnetonka, the Deephaven line, extending from the same point of beginning to Deephaven, and the Como-Hopkins line, extending from St. Paul through Minneapolis to Hopkins. Each of these lines is operated in Minneapolis over the tracks of the street railway company up to the point where the cars enter the private right of way of defendant at Hennepin avenue and Thirty-first street.

The trial court held that the right of way was not subject to an ad valorem tax, and rendered judgment in favor of defendant. The state appeals.

The question is at what point the lines operated by defendant cease to be "street railways," within Laws 1909, p. 552, c. 454. If it is at the point where they enter the private right of way of defendant, the decision below was right. If it is the city limits of Minneapolis, the gross earnings law does not apply, and the right of way within the city limits is subject to an ad valorem tax. The state claims that this case is ruled in its favor by State v. Minneapolis & St. P. S. Ry. Co. 122 Minn. 106, 142 N. W. 19. Reading that case by itself, it gives ground for the contention, in that it upheld the rights of defendants, the suburban companies, to deduct in their report of gross earnings all money received by them for the transportation of passengers within the cities of St. Paul and Minneapolis, and to report only the fares received outside those cities. But the fact that for two miles in the outskirts of Minneapolis, but within the city limits, defendants operated the cars over their private right of way and not along the city streets was not mentioned. This feature was present, however, in State v. Minneapolis & St. P. S. Ry. Co. 114 Minn. 70, 130 N. W. 71. That case involved the St. Paul-Stillwater line, and the proceedings were to enforce payment of personal property taxes against the suburban company, the taxes being levied on

property located within the city of Stillwater, the village of South Still-water, the town of Baytown and the town of Stillwater. The claim of the company was that it was a railroad, within the meaning of Laws 1909, p. 552, c. 454, was therefore subject to a gross earnings tax, and not liable to pay ad valorem taxes. The line operated by defendant extended from St. Paul over its own right of way to the westerly limits of Stillwater and for a distance of 3,600 feet inside of the city limits to a power house at North Owen and Laurel streets. Beyond this it operated over the city streets and public highways. It was distinctly held that the line operated within the city of Stillwater from the power house on North Owen street, and the lines operated on Owen street and to South Stillwater were street railways, within the exception pro-vided in chapter 454, and that property of the company located in the city, village or town, and used in the operation of such lines therein, was subject to taxation. But it was just as definitely held that the line operated between the power house on North Owen street and the city of St. Paul was not a street railway, but an interurban or trolley line, within the provisions of chapter 454, and taxable under the gross earn-ings law. The court was particular to fix the dividing line at the point where the company left its own right of way and began to operate on the streets of Stillwater, and not at the city limits. As stated, this point was 3,600 feet inside of the limits of Stillwater.

There is no distinction in principle between the Stillwater case and the one at bar. The only difference is that here defendant operates along its own right of way for a distance of two miles within the limits of Minneapolis before reaching the country outside, while in the Stillwater case the distance was 3,600 feet, or approximately two-thirds of a mile. Of course this does not distinguish the two cases. That the court in the Stillwater case deliberately and intentionally fixed the point where defendant ceased to be a "street railway" and became an "interurban or trolley line" at the point where it ceased to use the city streets and entered upon its private right of way, is clear both from the definite language used in describing the line and its limits, and from the discussion in the opinion as to the features that distinguish a "street railway," and a railroad. The court quoted from Minneapolis & St. P. S. Ry. Co v. Manitou Forest Syndicate, 101

Minn. 132, 112 N. W. 13, in which we said that "the essential and predominant distinction is that a street railway is operated upon the street in aid of the street as a highway," and cited Newell v. Minneapolis, L. & M. Ry. Co. 35 Minn. 112, 27 N. W. 839, 59 Am. Rep. 303, and other cases.

As stated by the Chief Justice in State v. Minneapolis & St. P. S. Ry. Co. 122 Minn. 106, 142 N. W. 19, "we are impressed that defendant companies, and others similarly incorporated, and operating partly within and partly without municipalities should be either commercial or street railways and not be burdened with both characters." But as long as the duty is that of the courts to determine at what point a line ceases to be a street railway and becomes a commercial railway, there is reason in making the point that at which the railway ceases to use city streets or public highways without compensation to abutting owners, and acquires its own right of way. This is a less arbitrary point than the city limits. Except that the lines of defendant cross city streets between Thirty-first street and the city limits, they partake as much of the character of a commercial railroad while traversing this two-mile stretch as they do after they leave the city limits. The trains are operated at a high speed and make but four stops from Thirty-first street to the city limits. They are not operated under any franchises granted by the city of Minneapolis. It is in evidence that defendants have in prior years, in reporting their earnings for the compilation of the gross earnings tax, deducted five cents for each passenger getting on or off within the city limits, including those getting on or off at any of the stops between Thirty-first street and the city limits. We do not regard this as a controlling fact, though it is manifest that earnings on the two-mile stretch should be included in the gross earnings upon which the tax is computed.

It is unnecessary to decide whether the decision of the trial court can be upheld on the ground that the state is estopped by judgments in favor of defendant for the taxes of prior years.

Judgment affirmed.