# TOWN OF KINGHURST AND OTHERS v. INTERNATIONAL LUMBER COMPANY AND OTHERS.[1]

April 20, 1928.

No. 26,634.

**Abutting fee owner owns to center of highway subject to public easement.**

   1 (a)   The abutting fee owner owns to the center of a highway subject only to the public easement giving the right to travel thereon.

**When owner of fee on both sides of highway may use it as his necessity requires.**

   (b)   Where a party owns the fee on both sides of the road he may use such highway as his convenience and necessity may require unless and until such use unreasonably interferes with the public travel thereon.

**When logging railway across highway is not incompatible with public travel.**

   (c)   The presence of a properly constructed and maintained logging railroad across a highway is not incompatible with the travel on the highway.

**Constitutionally, construction of such crossing does not take or damage plaintiffs' property.**

   (d)   In a constitutional sense, no property of plaintiffs is taken or damaged by the fee owner in constructing and maintaining such crossing.

**Statute does not take property without due process of law.**

   L. 1927, c. 288, is a regulatory statute. But assuming that it authorizes the county board to grant to one owning the fee on both sides an additional right burdening the public easement, it does not involve the taking of property in violation of art. 1, § 7, of the state constitution.

**Such use of public highways may be delegated to subdivisions of the state.**

   (e)   The state by its legislature may authorize the regulation of the use of public highways and may delegate such regulation to subdivisions of the state.

[1]Reported in 219 N. W. 172.

**Statute does not cause increased taxation for private purposes.**

2. Said statute does not contravene art. 9, § 1, of the state constitution.

It is construed as authorizing the county board to require such fee owner who procures a permit to construct and temporarily maintain a logging railroad across a highway to pay the expenses of such board in supervising the construction and maintenance of such crossings.

**Statute does not make an improper classification of railroads.**

3. The classification made in said statute is not in violation of art. 4, §§ 33, 34, of our state constitution.

**Constitutionality of act cannot be questioned by person not injured by it.**

4. A person cannot question the constitutionality of a law which does not affect him.

Constitutional Law, 12 C. J. p. 760 n. 57; p. 862 n. 49; p. 1215 n. 91.

Highways, 29 C. J. p. 540 n. 76; p. 548 n. 79; p. 549 n. 85; p. 646 n. 40, 43; p. 647 n. 54; p. 648 n. 63.

Railroads, 33 Cyc. p. 294 n. 85.

Statutes, 36 Cyc. p. 991 n. 87; p. 993 n. 93; p. 994 n. 98.

Taxation, 37 Cyc. p. 729 n. 72.

See 13 R. C. L. 121; 3 R. C. L. Supp. 16; 4 R. C. L. Supp. 799; 6 R. C. L. Supp. 750; 7 R. C. L. Supp. 412.

See 6 R. C. L. 89; 2 R. C. L. Supp. 21; 4 R. C. L. Supp. 379; 5 R. C. L. Supp. 318; 6 R. C. L. Supp. 354; 7 R. C. L. Supp. 171.

Action in the district court for Itasca county by the townships of Kinghurst, Max and Grattan to restrain the defendant lumber company from extending a logging railroad across certain highways in said townships, and to enjoin the defendant county board and county auditor of Itasca county from issuing a permit to the defendant lumber company pursuant to L. 1927, c. 288. From an order, Torrance, J. sustaining demurrers to their answers, defendants appealed. Reversed.

*C. C. McCarthy,* for appellant lumber company.

*W. B. Taylor,* County Attorney, for appellants county board and county auditor.

*Abbott, MacPherran, Dancer, Gilbert & Doan,* amici curiae, filed a brief in support of the contention of appellants.

*R. A. McOuat* and *Gannon, Strizich & Farnand,* for respondents.

WILSON, C. J.

Defendants appealed from an order sustaining a demurrer to their answers.

Defendant corporation owns timber in northern Minnesota, including some in plaintiff townships. For years it has been engaged in cutting and hauling its timber. It owns and uses in its business a private logging railroad which extends from International Falls, where it manufactures forest products, to about 100 miles into the forest. Such railroad has always crossed highways. Meeting opposition in plaintiff townships, the company made application to the board of county commissioners for a permit pursuant to L. 1927, p. 402, c. 288, authorizing it to cross certain highways in said townships. The permit was granted September 20, 1927, and a $100,000 bond was required. This action was brought to restrain and enjoin the issuance of the permit and to enjoin the company from extending its roads across highways and from further use of those already laid.

The order from which the appeal is taken rests upon the theory that L. 1927, p. 402, c. 288, is unconstitutional.

1. "No person shall * * * be deprived of * * * property without due process of law." Minn. Const. art. 1, § 7. Of course the legislature cannot authorize the taking of private property for private use. State ex rel. Schubert v. Bd. of Supervisors, 102 Minn. 442, 114 N. W. 244, 120 A. S. R. 640; Sanborn v. Van Duyne, 90 Minn. 215, 223, 96 N. W. 41; City of St. Paul v. C. M. & St. P. Ry. Co. 63 Minn. 330, 352, 63 N. W. 267, 65 N. W. 649, 68 N. W. 458, 34 L. R. A. 184.

(a) In the ordinary highway the abutting landowner owns the fee to the center of the road subject to the public easement giving the right to use the same as a highway. Whatever rights plaintiffs have in the highways in question they hold in trust for the public use. But what are the rights of the fee owner? He is an owner, but his rights are subordinated to the easement, which he cannot destroy. There are then two estates in the land.

(b) We are dealing with a corporation which owns the fee on both sides of the highways. It owns its roadbed or right of way.

Its tracks are upon its own ground. Its extensions will be on its own ground. Does the presence of the public easement for travel on the highways prevent the owner from using his own lands so long as he does not obstruct or interfere with the travel thereon? We think not. The company is the fee owner on both sides of the roads. The existence of the public easement in the highways cannot deprive the fee owner of the right to cross such highways, which divide his lands, as his convenience and necessity may require. Village of Mankato v. Willard, 13 Minn. 1 (13), 97 Am. D. 208; Newell v. M. L. & M. Ry. Co. 35 Minn. 112, 27 N. W. 839, 59 Am. R. 303. The fee owner has the right to use his fee in the highway for such private purpose as he may desire unless and until such use unreasonably interferes with the public travel thereon. 29 C. J. 548, 549. He may cross with his teams and farm machinery or with his cattle. He may cross with a disc harrow, a spring tooth harrow, a quack grass machine, a threshing machine, a tractor, a horse-pulled logging sled on a snow road with its ice ruts, though some of these tend to impair the efficiency of the highway. The only difference between any of these and a logging railroad is the presence of the ties and rails. With this exception the difference is one of degree only. When new means of locomotion or transportation come into use they must be recognized so long as they are not dangerous and do not interfere with the proper use of the highway. 29 C. J. 647, § 410.

(c) We see no reason why such landowner cannot plank his way across the highway if he desires, as long as he does not interfere with the public travel. But such railroad is not for all time. Its presence is of limited duration. If properly constructed and maintained, its temporary physical presence is not incompatible with the travel on the highway.

(d) The presence of such private logging road in crossing the highway cannot be treated or considered as adding an additional servitude. It is an incident to ownership. Such use by the fee owner is always permissible and possible, subject only to the constant and imperative restriction that the right of the public travel is paramount. We take judicial notice of the fact that such private

logging railroad is the most economical and in many places the only practical method of marketing great areas of timber products. We also take judicial notice of the fact that the ordinary sled and snow logging road with its necessary iced ruts would ordinarily constitute a much greater obstruction when crossing a highway than a crossing of the character here involved.

Damages, not including special damages which are not here involved, to an abutting owner for the construction and maintenance of a railway on a street are limited to those which result from the construction and operation directly opposite his land. 2 Dunnell, Minn. Dig. (2 ed.) § 3067; Adams v. C. B. & N. R. Co. 39 Minn. 286, 39 N. W. 629, 1 L. R. A. 493, 12 A. S. R. 644; Gustafson v. Hamm, 56 Minn. 334, 57 N. W. 1054, 22 L. R. A. 565; Demueles v. St. P. & N. P. Ry. Co. 44 Minn. 436, 46 N. W. 912; Papooshek v. W. & St. P. R. Co. 44 Minn. 195, 46 N. W. 329; Lamm v. C. St. P. M. & O. Ry. Co. 45 Minn. 71, 47 N. W. 455, 10 L. R. A. 268; Stuhl v. G. N. Ry. Co. 136 Minn. 158, 161 N. W. 501, L. R. A. 1917D, 317. So when the fee owner merely passes from his fee on one side to his fee on the other side, who is damaged? There is a great difference between a railroad which travels along a highway and one which merely crosses it. M. & St. P. Sub. Ry. Co. v. Manitou Forest Syndicate, 101 Minn. 132, 151, 112 N. W. 13. The statute really gives such fee owner nothing which he did not already have. It is a regulatory statute. However, we will discuss plaintiffs' contentions upon their theory.

Plaintiffs have no proprietary interest in the highways. No private property of plaintiffs is taken or damaged by the presence of such logging road where it crosses the highways. In a constitutional sense they have no property involved. City of International Falls v. M. D. & W. Ry. Co. 117 Minn. 14, 134 N. W. 302. If the statute were construed as authorizing the imposition of an additional servitude made by the railroad crossing, we would hold that it does not take from the owners of other lands, on both sides of the road throughout the entire length, their property or any interest therein. So construed the statute would not contemplate or involve the taking of property. It would merely authorize the owner of property

to use his own in a way not to interfere with the public easement for the protection of which the matter was put in the hands of the county board, and no one would be deprived of his property without due process of law.

We see no constitutional objection to the legislature's authorizing the county board to permit an additional servitude upon the public easement so long as it does not impair the integrity of such easement or interfere therewith. The claim that such additional servitude, created by the railroad crossing, will operate to take private property from the owners of lands adjacent to the highway but not included in the crossing is fanciful and cannot find substantial support from the record before us. The only interference with the public travel is the occasional wait for a train to pass, but such an incident is common to our dependency upon each other. It would be no more serious than if the company used tractors or snow roads in place of the railroad, as it concededly has a right to do.

To a very great extent plaintiffs' case rests upon the proposition that the construction and maintenance of the logging railroad across a highway is an unlawful obstruction thereof under G. S. 1923, § 2615, and would be a public nuisance within G. S. 1923, § 10241. The record does not warrant this assumption of fact. The supervision of the construction and maintenance is in the hands of the county board, and we must assume that no statutory obstruction will be created or maintained in violation of § 2615, much less a public nuisance within § 10241. We do not recognize the ordinary grade commercial railroad crossings upon our highways as obstructions or nuisances. They are not.

In the matter of obstruction of a highway, every alleged incident must stand on its own facts; but it is only where there has been a clear diversion of the highway to a use inconsistent therewith that the courts will interfere. City of St. Paul v. C. M. & St. P. Ry. Co. 63 Minn. 330, 63 N. W. 267, 65 N. W. 649, 68 N. W. 458, 34 L. R. A. 184. The element of necessity sometimes becomes important. Village of Mankato v. Willard, 13 Minn. 1 (13), 97 Am. D. 208; Hoey v. Gilroy, 129 N. Y. 132, 29 N. E. 85. These features are important only in the determination of the facts.

Under any construction the statute does not contemplate or involve the taking of property. It recognizes and regulates the right of the owner of the fee to use the highway so long as he does not unreasonably interfere therewith. Yet, if we followed plaintiffs' construction and said that it gave such fee owner an additional right, we would have to hold that such restricted use by the owner of the fee would not be a perversion of the highway to a use for which it was not intended, and would not upon any theory violate art. 1, § 7, of the state constitution.

(e) The legislature has paramount authority over all public highways. The subdivisions of the state exercise such control over highways as the legislature specifically delegates to them and, subject to the state's sovereign power through the legislature to limit such municipal control, transfer the same to other agencies of the state or take the same entirely away. 3 Dunnell, Minn. Dig. (2 ed.) § 4158; State ex rel. Young v. Standard Oil Co. 111 Minn. 85, 126 N. W. 527; City of St. Paul v. C. M. & St. P. Ry. Co. 63 Minn. 330, 63 N. W. 267, 65 N. W. 649, 68 N. W. 458, 34 L. R. A. 184; 29 C. J. 646, § 409; 13 R. C. L. 163, § 143; Schultz v. City of Duluth, 163 Minn. 65, 203 N. W. 449.

2. It is also urged that the statute is unconstitutional in that it violates art. 9, § 1, of the constitution of this state, which provides that "taxes * * * shall be levied and collected for public purposes."

This claim rests upon the theory that the supervision by the county board of the construction and maintenance of the crossings would cause increased expense, resulting in taxation for private purpose.

The statute authorizes the permit for the crossings to be granted for such period as the board may determine, not to exceed five years. The permit shall specify the place, the time, the manner of its construction and maintenance, and the measures that shall be taken for the protection of the highway and of the public using such highway. It further provides that the construction and maintenance of such railroad crossings shall be under the supervision and control of the county board. The applicant is. required to give the

board a surety bond in such sum as the board may fix, "conditioned for the compliance with and performance of all of the terms and conditions of such permit and of this act."

No one would expect the county to be put to any expense in connection with the matter. Though the company's business may carry with it elements of local public benefit, the primary purpose of this law is for the individual benefit of the company and to make it possible for it to realize upon its timber holdings. This is purely a private matter, though the public is usually interested in the success of local private business, especially when it carries elements necessarily beneficial to the public. To learn the intent of the legislature we must read the law in the light of the object in view. Every presumption is in favor of the constitutionality of the law. Unless a statute is unconstitutional beyond a reasonable doubt it must be sustained. If it is susceptible of two different constructions one of which will render it constitutional and the other unconstitutional, the former construction must be adopted. State ex rel. Hildebrandt v. Fitzgerald, 117 Minn. 192, 134 N. W. 728; State ex rel. Wilcox v. Ryder, 126 Minn. 95, 147 N. W. 953, 5 A. L. R. 1449; State ex rel. Simpson v. County of St. Louis, 117 Minn. 42, 134 N. W. 299; Lommen v. Minneapolis Gaslight Co. 65 Minn. 196, 68 N. W. 53, 33 A. L. R. 437, 60 A. S. R. 450; Curryer v. Merrill, 25 Minn. 1, 33 Am. R. 450; State ex rel. Arpin v. George, 123 Minn. 59, 142 N. W. 945; State ex rel. Olsen v. Board of Control, 85 Minn. 165, 88 N. W. 533; McReavy v. Holm, 166 Minn. 22, 206 N. W. 942.

Having these rules of construction in mind, our duty is comparatively easy. Clearly the purpose was to grant a permit to the company solely for its benefit, with the intention of granting to the board full power and authority to protect the public and to make provision therefor by the permit itself, and to enforce the requirements and obligations of the permit by requiring a surety bond conditioned accordingly. If the tracks and ties were to be placed in the highway, the public interest in the easement would be sufficient to warrant the imposition of the regulations of the statute. We construe the law as requiring the board to impose upon the

applicant the burden of paying all expenses incurred by the county. The act is constitutional.

3.   The constitutionality of this law is also challenged as being in conflict with art. 4, §§ 33 and 34, of our state constitution.   Is the classification proper?   It is uniform in its operation, and we cannot hold it special legislation unless it clearly appears that there is no reasonable basis for distinguishing between private logging railroads and other private railroads.   The legislature has seen fit to put the former in a class by themselves.   If the necessity for the law calls for the exercise of discretion in the classification made, we cannot review such discretion and substitute our views as to the propriety of the classification.   We cannot interfere unless it is plain that the legislature has evinced a legislative purpose of evading the constitution.   Driscoll v. Commrs. of Ramsey County, 161 Minn. 494, 201 N. W. 945.

Presumably the legislature duly considered the propriety of the classification.   Such railroads are temporary.   Their necessity has a relation to the state's natural resources.   They are located in the forests where highways are scarce and where travel is light.   They are often of considerable length.   They are essential to the economic production of timber and are frequently an aid in the disposition and marketing of the state's timber.   They may be of help to the pioneer settler who follows the lumberman.   These are merely a few of the characteristics which are peculiar to logging railroads. If perchance there were other private railroads that might have been included, that would not constitute a constitutional objection. It is only when the classification is arbitrary or illusory that the courts will interfere.   It is clear that no other private railroads possess all the peculiar characteristics of the logging railroads, which under conditions considered by the legislature adequately support their individual classification.   The courts are slow to interfere with legislative classification.   The legislature is usually informed as to the problems involved and is in a position to make such investigation as the matter deserves.   The classification implies in the first instance that it is based upon adequate grounds.   The principles controlling the legislative classification have been stated in:

State v. Fairmont Creamery Co. 162 Minn. 146, 202 N. W. 714, 42 A. L. R. 548; Driscoll v. Commrs. of Ramsey County, 161 Minn. 494, 201 N. W. 945; State v. Pocock, 161 Minn. 376, 201 N. W. 610; State ex rel. St. Paul City Ry. Co. v. Minnesota Tax Comm. 128 Minn. 384, 150 N. W. 1087; Mathison v. Minneapolis St. Ry. Co. 126 Minn. 286, 148 N. W. 71, L. R. A. 1916D, 412; Thorpe Bros. Inc. v. County of Itasca, 171 Minn. 312, 213 N. W. 914; Hunter v. City of Tracy, 104 Minn. 378, 116 N. W. 922; Dohs v. Holm, 152 Minn. 529, 189 N. W. 418; State v. Ames, 91 Minn. 365, 98 N. W. 190; Spencer v. Griffith, 74 Minn. 55, 76 N. W. 1018; State ex rel. Douglas v. Westfall, 85 Minn. 437, 89 N. W. 175, 57 L. R. A. 297, 89 A. S. R. 571; McReavy v. Holm, 166 Minn. 22, 206 N. W. 942; State ex rel. Flaten v. Ind. School Dist. 143 Minn. 433, 174 N. W. 414; Ind. School Dist. No. 36 v. Ind. School Dist. No. 68, 165 Minn. 384, 206 N. W. 719; Wall v. County of St. Louis, 105 Minn. 403, 117 N. W. 611; State v. Cloudy & Traverse, 159 Minn. 200, 198 N. W. 457; State v. Bridgeman & Russell Co. 117 Minn. 186, 134 N. W. 496, Ann. Cas. 1913D, 41; Petters & Co. v. Veigel, 167 Minn. 286, 209 N. W. 9.

4. Since the record fails to show that plaintiffs are or will be hurt by virtue of the provisions of the statute, they are not in a position to attack its constitutionality. State v. Hoffman, 159 Minn. 401, 199 N. W. 175; State v. Nebraska Tel. Co. 127 Iowa, 194, 103 N. W. 120; Thompson v. Mitchell, 133 Iowa, 527, 110 N. W. 901; State v. Brandt, 83 Neb. 656, 120 N. W. 196; City of San Francisco v. McGovern, 28 Cal. App. 491, 152 P. 980; People v. Pitcher, 56 Colo. 343, 138 P. 509; Roberts & Schaefer Co. v. Emmerson, 271 U. S. 50, 46 S. Ct. 375, 70 L. ed. 827; 6 R. C. L. §§ 87, 88, 89, 90, 92; 12 C. J. 760, §§ 177-189.

Reversed.

HILTON, J. took no part.